**UNITED STATES DISTRICT COURT**
**NORTHER DISTRICT OF OHIO**

| | |
|---|---|
| RISING BIOSCIENCES, INC., ARCTIC GATOR SERVICES LLC, ENVIRAL-CLEAN INC., OXI-THYME SOUTH EAST INC., OXI-THYME CENTRAL LLC, OXI-THYME OF CAROLINA'S LLC, ENVIRONMENTAL ALTERNATIVES SOLUTIONS INC., WILLIE COLEMAN, and MIKE MASON<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>ESSENTIAL WATER SOLUTIONS, INC.<br><br>　　　　　　　　　　　Defendant, | No. 3:22-cv-01925 |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**RISING BIOSCIENCES, INC.** (hereinafter "Rising Biosciences"), **ARTIC GATOR SERVICES LLC**, **ENVIRAL-CLEAN INC.**, **OXI-THYME SOUTH EAST INC.**, **OXI-THYME CENTRAL LLC**, **OXI-THYME OF CAROLINA'S LLC**, **ENVIRONMENTAL ALTERNATIVES SOLUTIONS INC.**, **WILLIE COLEMAN** and **MIKE MASON** (Collectively all including Rising Biosciences hereinafter "Plaintiffs)" complain of Defendant **ESSENTIAL WATER SOLUTIONS, INC.** (hereinafter "EWS" or "Defendant"), upon information and states as follows:

**NATURE OF THE ACTION**

1.　Plaintiffs bring this case against EWS for the injuries and damages they sustained from the selling and marketing of a product manufactured and designed by Defendant that failed to contain appropriate instructions and warnings related to its use along with the product not conforming with the representations made by Defendant.

## PARTIES

2. Plaintiff **RISING BIOSCIENCES, INC.** is a Delaware corporation with its principal place of business located at 2055 Cleveland Road, Sandusky, Ohio 44870. Rising Biosciences is a resident of the State of Ohio.

3. Plaintiff **ARTIC GATOR SERVICES LLC** is as Alaskan limited liability company with its principal place of business located in Eagle River, Alaska. It is a citizen and resident of the State of Alaska.

4. Plaintiff **OXI-THYME SOUTH EAST INC.** is a Wyoming corporation with its principal place of business located in Saint Augustine, Florida. It is a resident of Florida.

5. Plaintiff **OXI-THYME CENTRAL LLC** is a Delaware limited liability company with its principal place of business located in Charlotte, North Carolina. It is a resident of the State of North Carolina.

6. Plaintiff **OXI-THYME OF THE CAROLINA'S LLC** is a Delaware limited liability company with its principal place of business located in Charlotte, North Carolina. It is a resident of the State of North Carolina.

7. Plaintiff **ENVIRONMENTAL ALTERNATIVES SOLUTIONS INC.** is a Pennsylvanian corporation with its principal place of business located in Bensalem, Pennsylvania. It is a citizen and resident of the State of Pennsylvania.

8. Plaintiff **WILLIE COLEMAN** is a citizen and resident of the State of West Virginia. Mr. Coleman did business under the name OxiThyme WV.

9. Plaintiff **MIKE MASON** is a citizen and resident of the State of West Virginia. Mr. Mason did business under the name OxiThyme WV.

10. Defendant **ESSENTIAL WATER SOLUTIONS, INC.** is an Iowa corporation doing business in the State of Ohio. ESW can be served through its registered agent is Mary K. Navratil at 545 T Avenue, Boone, Iowa 50036. ESW is a resident and citizen of the State of Ohio. All acts and omissions of ESW as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

## JURISDICTION AND VENUE

11. Plaintiffs bring this complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

12. Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to this claim occurred in this district and the Plaintiff Rising Biosciences resides in this district.

## FACTUAL ALLEGATIONS

13. Rising Biosciences is a company that markets and sells disinfectant products that are safe and effective for use in everyday settings.

14. In developing its business model, Rising Biosciences determined that hydrogen peroxide-based products would be the best products to sell and market to fulfill its goal of providing safe and effective disinfectants.

15. In furtherance of its business model, Rising Biosciences obtained a company/distributor number from the Environmental Protection Agency (hereinafter "EPA") so that it could sell and market hydrogen peroxide-based products.

16. Rising Biosciences began setting up business relations with entities who would be used to distribute and market its products. Eventually, the following entities and/or individuals would become distributors for Rising Biosciences: Arctic Gator Services, LLC, Enviral-Clean Inc., Oxi-Thyme South East Inc., Oxi-Thyme Central LLC, Oxi-Thyme of Carolina's LLC, Environmental Solutions Inc., Willie Colemen d/b/a OxiThyme WV and Mike Mason d/b/a OxiThyme WV.

17. After beginning the process of setting up its network of distributors, Rising Biosciences began searching for hydrogen peroxide products currently manufactured by EPA licensed Registrants that Plaintiffs could market and sell. It was of utmost importance for Plaintiffs to only use products manufactured by an EPA licensed Registrant in order to lawfully distribute the types of products that they wished to market and sell.

18. One of the manufacturers that Rising Biosciences contacted was Defendant. Rising Biosciences initially contacted Defendant about a product called Oxy Blast 35 seeking to determine if it would be an effective product to market. After some initial calls and emails, Defendant set up a conference call with Rising Biosciences to discuss Defendant's products.

19. During that conference call, Rising Bioscience explained that it wished to market and sell hydrogen peroxide-products as sanitizers and/or disinfectants in many different states using distributors. It clearly stated that any products it sold would be used for indoor use and that those products must be safe and effective.

20. As the conference call progressed, Defendant and its owners and/or agents suggested that Defendant's Oxy Blast 50 product might be a better product to market and sell rather than Oxy Blast 35.

21. Defendant sent Rising Biosciences a number of documents that same day discussing the merits of Oxy Blast 50. Among those documents included were a summary of a water sanitation trial for the Oxy Blast product conducted by the University of Arkansas, a statement from Defendant's EPA Consultant regarding the nature and characteristics of Oxy Blast 50, a general fact sheet regarding Oxy Blast, and a statement of the benefits of Oxy Blast over and above the use of "plain" Hydrogen Peroxide.

22. In those four documents, Defendant and/or its agents made some claims regarding the Oxy Blast product that persuaded Rising Biosciences to choose Oxy Blast 50 as a product it wanted Plaintiffs to sell and ultimately guided how Plaintiffs marketed the Oxy Blast 50 product.

23. Among the statements included the following:

(a) That Oxy Blast was a proven broad spectrum algaecide, bactericide and fungicide;

(b) That Oxy Blast was a sanitizer and/or disinfectant that was safe to use in the presence of both animals and humans;

(c) That Oxy Blast 50 was EPA approved; and

(d) That Oxy Blast 50 killed bacteria and killed viruses and fungi.

24. Relying upon the representations regarding the nature of Oxy Blast 50, Rising Biosciences entered into a business relationship with Defendant.

25. Rising Biosciences wished to sell the Oxy Blast 50 in containers much smaller than the containers that Defendant normally sold Oxy Blast 50. Because, Defendant did not have access to a bottler who could produce the smaller sizes of bottles that Rising Biosciences wished to use, Defendant informed Rising Biosciences that a new

label would have to be created for Oxy Blast 50 before the product could be sold in the smaller sizes of bottles. This label would have to include the necessary warnings and instructions dictated by the EPA for Oxy Blast 50. These warnings and instructions were known by Defendant.

26. As Rising Biosciences had no experience in crafting labels for products such as Oxy Blast 50, it relied upon Defendant and/or its agents to craft the proper label with the proper warnings and instructions. In fact, Defendant would not allow Rising Biosciences and/or any of the Plaintiffs to sell its products without Defendant having approved all of the language contained on the label.

27. After Defendant gave its final approval for the label, Plaintiffs began marketing and selling Oxy Blast 50 containing the warnings and instructions drafted by Defendant.

28. On October 26, 2020, the EPA issued a Stop Sale, Use, or Removal Order (hereinafter "SSURO") to Rising Biosciences prohibiting Plaintiffs from selling Oxy Blast 50 due to deficiencies in the labels used for the product.

29. Specifically, the EPA claimed that the label used for the product amounted to a "misbranded" product as it lacked necessary directions and/or warning statements. The EPA asserted that this misbranding was a violation of the Federal Insecticide, Fungicide, and Rodenticide Act.

30. The EPA stated in the SSURO that the instructions drafted by Defendant for the smaller bottle had not been approved by the EPA as part of the registration of Oxy Blast 50.

31. The EPA further stated in the SSURO that the warnings drafted by Defendant for the smaller bottle had not been approved by the EPA as part of the registration of Oxy Blast 50 and omitted warnings that had to be included on any label for Oxy Blast 50.

32. The EPA's action in issuing the SSURO along with its administrative action against Rising Biosciences has severely curtailed the ability of Plaintiffs to conduct business.

33. The EPA's actions have been driven by the failures of Defendant to craft a label for Oxy Blast 50 that contained properly warnings and instructions for its use.

34. The EPA's actions also evidence that the representations made by Defendant and it agents were not reliable.

## CAUSES OF ACTION

### COUNT I
### Negligence

35. Plaintiffs incorporate by reference paragraph nos. 1 through 34 of this Complaint as if fully set forth herein.

36. Defendant had a duty to individuals, including Plaintiffs, to use reasonable care in designing, manufacturing, marketing, labeling, packaging and selling the Oxy Blast 50 product.

37. Defendant was negligent in failing to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the Oxy Blast 50 product.

38. As a direct and proximate result of Defendant's negligence, Plaintiffs were caused and/or in the future will be caused to suffer financial or economic loss, including, but not limited to, lost income, and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble and punitive damages, including costs and attorney's fees, and all such other relief as the Court may deem proper.

## COUNT II
### Strict Liability – Inadequate Instructions
**(ORC §2307.76, *et. seq.*)**

39. Plaintiffs incorporate by reference paragraph nos. 1 through 38 of this Complaint as if fully set forth herein.

40. The Oxy Blast 50 product designed and manufactured by Defendant was not reasonably safe for its intended use and was defective as a matter of law due to its lack of appropriate and necessary instructions.

41. As a direct and proximate result of the Oxy Blast 50's aforementioned defects in regard to its appropriate and necessary instructions, Plaintiffs were caused and/or in the future will be caused to suffer financial or economic loss including, but not limited to, lost income and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory, treble and punitive damages, including costs and attorney's fees, and all such other relief as the Court may deem proper.

## COUNT III
### Strict Liability – Non-Conformity to Representations
### (ORC §2307.77, *et. seq.*)

42. Plaintiffs incorporate by reference paragraph nos. 1 through 41 of this Complaint as if fully set forth herein.

43. Defendant represented to Rising Biosciences that the Oxy Blast 50 product was a safe and effective product for use as both a sanitizer and/or disinfectant that would kill viruses. Rising Biosciences reasonably and justifiably relied upon Defendant's representations that the Oxy Blast 50 product was safe for use as a sanitizer and/or disinfectant that would kill viruses.

44. Defendant further represented that the Oxy Blast 50 product would be safe to use as a sanitizer and/or disinfectant for use indoors. Rising Biosciences reasonably and justifiably relied upon Defendant's representations that the Oxy Blast 50 product was safe for use as a sanitizer and/or disinfectant that could be used indoors.

45. Rising Biosciences reasonably and justifiably relied upon Defendant's representations in offering Oxy Blast 50 to the remainder of the Plaintiffs to distribute, market and sell.

46. As a direct and proximate result of Rising Bioscience's and/or Plaintiffs' reliance on Defendant's representations about the Oxy Blast 50 product, Plaintiffs suffered injuries and damages as summarized herein.

WHEREFORE, Plaintiffs demand judgment against ESW for compensatory, treble and punitive damages, including costs and attorney's fees, and all such other relief as the Court may deem proper.

## TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

47. Plaintiffs incorporate by reference paragraphs 1-46 of this Complaint as if fully set forth herein.

48. Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including, equitable tolling, class action tolling, delayed discovery, discovery rule, and Ohio's H.B.197, which extended any applicable statute of limitations until October 26, 2022.

## JURY DEMAND

49. Plaintiffs demand a jury trial on all counts.

Dated: October 26, 2022          Respectfully submitted,

/s/ *Joshua Fraley*
Joshua M. Fraley, Esq. (0095196)
Pencheff & Fraley Co., LPA
4151 Executive Parkway, Suite 355
Westerville, OH 43081
T: 614-224-4114 | F: 614-224-3804
jmfraley@pencheffandfraley.com
Attorney for Plaintiffs